FILED
2026 Jun-01 AM 09:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| DOSTER CONSTRUCTION COMPANY, INC., <br><br>     Plaintiff, <br><br> v. <br><br> EXPERT CLIMATE CONTROL, LLC, <br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)  **Case No.: 2:25-cv-01695-MHH**<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Doster Construction Company, Inc. has sued Expert Climate Control, LLC for breach of contract and breach of warranty. (Doc. 1). Climate Control has asked the Court to dismiss Doster's claims for lack of personal jurisdiction and improper venue. (Doc. 7). Alternatively, Climate Control asks the Court to transfer this action to the Southern District of Texas or the Middle District of Florida. (Doc. 7).

To address Climate Control's motion, the Court describes the procedural standards for Climate Control's challenges to personal jurisdiction and venue. Next, the Court summarizes Doster's allegations against Climate Control and the evidence the parties have submitted concerning personal jurisdiction and venue. Finally, the Court describes the legal standards that govern personal jurisdiction and motions to transfer venue and applies those standards to the record in this case to resolve

1

Climate Control's motion.

## I.

Under Rule 12(b)(2), a defendant may challenge a federal court's authority to exercise jurisdiction over the defendant because of the defendant's lack of contact with the federal forum. FED. R. CIV. P. 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction, a defendant typically asserts that it would be unfair to have to defend against the plaintiff's claims in the forum in which the plaintiff filed suit because the defendant is not at home in the forum and has not acted in the forum in a way that would cause the defendant to expect to have to litigate there.

A plaintiff who sues a non-resident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). A district court must accept as true the jurisdictional allegations in the plaintiff's complaint unless "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position.'" *Mosseri*, 736 F.3d at 1350 (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). If a defendant submits jurisdictional affidavits, then the burden returns to the plaintiff to provide evidence that supports the district court's exercise of jurisdiction over the defendant. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360

(11th Cir. 2006).  When the parties present conflicting evidence, a district court "must construe all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss a claim for improper venue.  When considering a Rule 12(b)(3) motion, a court "consciously look[s] beyond the mere allegations of a complaint, and, although [the court] continue[s] to favor the plaintiff's facts in the context of any actual evidentiary dispute, [the court] do[es] not view the allegations of the complaint as the exclusive basis for decision." *Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012).  A district court's ruling under Rule 12(b)(3) is reviewed "with some measure of deference." *Myhra*, 695 F.3d at 1238–39.

Even when venue is proper in a district, pursuant to 28 U.S.C. § 1404, a court may transfer a case to another venue for the convenience of the parties and in the interest of justice.  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)).  When deciding motions for transfer of venue, a district court may consider information provided in affidavits.  *See Marmol v. Adkins*, 655 F.2d 594, 596 (5th Cir. Sept. 8, 1981) (explaining that arguments regarding venue were unpersuasive

3

because they were "not supported by affidavit or other evidence"); *Marbury-Pattillo Constr. Co., Inc. v. Bayside Warehouse Co.*, 490 F.2d 155, 158 (5th Cir. 1974) (describing affidavits in support of and in opposition to motion for change of venue).[1]  A district court must take the facts alleged in a complaint as true, "to the extent they are uncontroverted by defendants' affidavits," and the court must "construe all reasonable inferences" in favor of the plaintiff. *Delong Equip. Co. v. Wash. Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988).

**II.**

Doster is an Alabama corporation with its principal place of business in Birmingham, Alabama.  (Doc. 1, p. 1, ¶ 1).  Doster has constructed buildings in 33 states and employs more than 200 people.  (Doc. 7-3).[2]  Climate Control is a Texas LLC with its principal place of business in Houston, Texas.  (Doc. 1, pp. 1–2, ¶ 2; Doc. 7-5, pp. 1–2, ¶¶ 3–4).  Climate Control has 19 employees.  (Doc. 7-5, p. 3, ¶ 9).

---

[1] The *Marmol* and *Marbury-Pattillo* decisions are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ("[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.")

[2] This document is a screenshot of Doster's website.  The webpage is accessible at DOSTER CONSTRUCTION, *Who We Are*, https://www.dosterconstruction.com/who-we-are/ [https://perma.cc/NJ3Q-7T6X] (archived March 31, 2026).

Since 2014, Doster and Climate Control have entered nine construction subcontracts. (Doc. 1, p. 3, ¶ 8). This action concerns the parties' eighth contract, in which Climate Control agreed to perform HVAC work for Doster on a construction project in Sanford, Florida. (Doc. 1, p. 2, ¶ 3; Doc. 7-5, pp. 2–3, ¶ 6; Doc. 11-1, p. 4, ¶ 8).[3]

In June 2021, Doster contracted with CC Parkway Owner, LLC to construct an apartment complex in Sanford, Florida. (Doc. 11-1, p. 3, ¶ 4; *see* Doc. 7-5, pp. 2–3, ¶ 6). Doster solicited bids from subcontractors, including Climate Control, for the project's HVAC work. (*See* Doc. 12-3, p. 4, ¶ 11).[4] In March 2021, Climate Control emailed Doster a proposal for the HVAC subcontract work. (Doc. 11-1, p. 4, ¶ 7). Over the next six months, the parties' negotiated the subcontract's terms. (*See* Doc. 11, pp. 9, 15; Doc. 11-1, p. 4, ¶ 9). During the negotiations, Climate Control's representatives in Texas communicated with Doster's representative in Alabama via mail and email. (*See* Doc. 11-1, p. 4, ¶ 9; Doc. 12-3, p. 2, ¶ 6). In September 2021, the parties finalized an agreement. (*See* Doc. 11-1, pp. 4–5, ¶ 10). Jesus Gonzalez virtually signed a subcontract dated July 29, 2021 on behalf of

---

[3] Under the parties ninth contract, Climate Control agreed to work on an apartment development in Huntsville, Alabama. (Doc. 11-1, p. 6, ¶ 15). The record does not explain the nature and scope of the parties' first seven contracts.

[4] The parties dispute who initiated the Florida subcontract. (*Compare* Doc. 11-1, p. 4, ¶ 7 *with* Doc. 12-3, p. 4, ¶ 11). During a telephone conference on January 22, 2026, Doster indicated that it asked several subcontractors whether they planned to bid on the project, and Climate Control submitted a bid in response. A transcript of the telephone conference is available upon request.

Climate Control.  (Doc. 11-1, pp. 4–5, ¶ 10; Doc. 11-1, pp. 22, 55).  Then, Mitchell Jones virtually signed the subcontract on behalf of Doster.  (Doc. 11-1, pp. 4–5, ¶ 10; Doc. 11-1, p. 22, 55).

Under the September 2021 subcontract, Climate Control agreed to install "all mechanical heating and cooling systems" for the apartment building units, common areas, amenities, and related improvements.  (Doc. 7-2, p. 14).   The subcontract included a warranty clause, which provides:

> Subcontractor warrants the Work to Contractor under the same terms and for at least the same period as Contractor has warranted the Work. Subcontractor assumes and shall perform all warranty obligations of Contractor that relate to the Work, and shall procure any warranties from others concerning the Work that may be required by the Prime Contract.   Without limiting any of Subcontractor's warranty obligations, Contractor and Owner are intended third-party beneficiaries of any warranties concerning the Work procured or received by Subcontractor from others.  In addition, Subcontractor warrants that the Work will be performed in strict accordance with all terms of this Subcontract and in conformity with the best practices of the construction industry, and that after completion, the Work will continue to perform and fulfill satisfactorily its intended function and purpose for a period not less than the maximum duration of any statute of limitations or rule of repose applicable to any claim or suit against Contractor or Contractor's surety arising in whole or in part from Subcontractor's Work.  Subcontractor further warrants and agrees that it will exercise due care in the performance of the Work, and will execute the Work in a non-negligent manner.  Subcontractor's warranty obligations survive termination of this Subcontract.
>
> All Work is subject to approval by Owner. If any part of the Work is determined to be defective or otherwise to constitute a breach of any of Subcontractor's warranties, Subcontractor, at its own expense, shall promptly correct or replace the same (as directed by Owner), and shall repair or replace any other work, materials, or property damaged or

required to be redone as a result of such correction or replacement. Nothing in this Paragraph may be interpreted to restrict Contractor's remedies, or the liability of Subcontractor or its surety, for any breach of Subcontractor's warranties.

Without limiting the generality of the foregoing, the obligations of Subcontractor under this Paragraph shall be construed to be a written express warranty for a term of years after substantial completion of the Work within the meaning of Ala. Code § 6-5-227 and any similar applicable statutes. The intent of the parties is that Contractor's right and ability to enforce the warranty obligations of Subcontractor and its surety shall under no circumstances expire or become barred by any statute of limitations or rule of repose until at least one (1) year after the date beyond which no person or entity can bring any suit or action, or enforce any right, against Contractor on account of any defect, deficiency, non-conformity, or performance failure of or in Subcontractor's Work. One Year parts & labor warranty with four additional years of equipment by manufacturer.

(Doc. 7-2, p. 4).

Climate Control sent Julian Gonzalez to Sanford, Florida, to supervise the HVAC work on the apartment complex. (Doc. 12-2, p. 2, ¶ 7). Climate Control ordered materials for the HVAC work through supply houses in Houston, Texas. (Doc. 12-2, p. 2, ¶¶ 5–6). While working on the apartment development, Climate Control provided documents to Doster's representatives in Birmingham via email and drop box and communicated with Senior Project Manager Tyler Schnell in Birmingham via email and telephone. (Doc. 11-1, pp. 5–6, ¶¶ 12–13).

In May 2024, Doster completed the apartment complex and turned the property over to the owner. (Doc. 1, p. 8, ¶ 19). On June 4, 2024, Climate Control executed a "supplemental warranty," which provides:

7

In addition to the Warranties or Guarantees provided in the Subcontract (the "Subcontract") of the undersigned Subcontractor ("Subcontractor") with Doster Construction Company, Inc. ("Doster") or the Contract Documents for the Project referenced above (the "Project"), Subcontractor does hereby WARRANT, REPRESENT, and GUARANTEE to Doster and to the owner identified above ("Owner") that all work and materials furnished by Subcontractor are in strict compliance with all requirements of the Subcontract and the Contract Documents for the Project, were completed in a good and workmanlike manner, and will remain free from defects or deficiencies in materials or workmanship for a period of one (1) year from date of Substantial Completion. Subcontractor shall promptly correct and remedy all defects and deficiencies occurring within that period, and any resulting damage, at no cost to Owner or Doster.   Owner may notify Subcontractor of any such defects or deficiencies as follows:

Subcontractor agrees to respond within twenty-four (24) hours after receipt of oral or written notice for emergency items that pose a risk of imminent injury or damage to life, health, safety, or property. For all other items, Subcontractor agrees to respond within seventy-two (72) hours after receipt of written notice.

If Subcontractor fails to comply with the above obligations within the time required, then after written notification (fax or e-mail) to Subcontractor by the Owner or Owner's agent, Subcontractor hereby authorizes Owner to proceed with having the defects replaced at Subcontractors expense, and Subcontractor will honor and pay upon demand the costs reasonably and necessarily incurred by Owner to repair or correct an item covered by this Warranty.

(Doc. 1, pp. 7–8, ¶ 18) (emphasis omitted); *see* Doc. 11-1, p. 38).

That summer, Doster received "notices, complaints, and demands concerning failures and deficient performance" of the apartments' HVAC systems.  (Doc. 1, p. 8, ¶ 20).  In July 2024, Doster notified Climate Control that the company had failed to properly install the HVAC systems and had failed to comply with its warranty

obligations and demanded that Climate Control promptly cure its noncompliance. (Doc. 11-1, p. 7, ¶ 18).   Doster sent Climate Control a second notice of noncompliance in October 2024.  (Doc. 11-1, pp. 7–8, ¶ 19).  In late November 2024, the apartment's owner demanded that Doster contract with third parties to address the HVAC systems' defects.  (Doc. 11-1, p. 8, ¶ 21).

In January 2025, Climate Control's president,  a salesman for the products Climate Control used for the apartment development, and Doster representatives met in Doster's Birmingham, Alabama offices to "review the causes and solutions for" the HVAC issues.  (Doc. 11-1, p. 8, ¶ 22).  Climate Control refused to perform additional work on the HVAC systems.  (Doc. 11-1, p. 8, ¶ 22).

After the parties' meeting, Doster notified Climate Control that it would hire third parties to repair the HVAC systems.  (Doc. 11-1, p. 9, ¶ 23).  Climate Control did not "meaningful[ly] respon[d]" to Doster's notice.  (Doc. 11-1, p. 9, ¶ 23). Doster hired Triad Mechanical Company, Inc. and other third parties to repair the systems.  (*See* Doc. 11-1, p. 9, ¶ 24).[5]  Doster has spent more than $400,000 to remediate the systems.  (*See* Doc. 1, pp. 10–11, ¶ 28).

---

[5] Triad Mechanical is a Georgia Corporation headquartered in Lawrenceville, Georgia.  (Doc. 11-1, p. 9, ¶ 24).

### III.

The Court employs a two-part inquiry to determine whether it has personal jurisdiction over Climate Control. The Court examines whether Alabama's long-arm statute authorizes an exercise of personal jurisdiction, and if so, whether that exercise of jurisdiction would violate due process. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp.*, 488 F.3d at 925 (citing ALA. R. CIV. P. 4.2(b)); *see also Ex parte Edgetech I.G., Inc.*, 159 So. 3d 629, 633 (Ala. 2014). Therefore, the Court must consider the limits of due process. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

The Fourteenth Amendment limits a district court's jurisdiction over a defendant to instances where the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)) (alteration added). Thus, a district court may adjudicate a cause of action involving a defendant who has such systematic and continuous contacts with the forum that the defendant essentially is "at home" in the forum state. *See Daimler AG v.*

10

*Bauman*, 571 U.S. 117, 127 (2014) (internal quotation omitted). A district court may exercise jurisdiction over a non-resident defendant who is not "at home" in the forum state only if the defendant's conduct in the forum "relate[s] to" the plaintiff's claims in a manner that establishes "an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb Co. v. Superior Ct. of California*, *San Francisco Cnty.*, 582 U.S. 255, 262 (2017); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

A district court may exercise personal jurisdiction over a nonresident defendant if "the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state," "the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state," and "the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (quotation omitted). Physical presence in a forum state is not required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

A defendant does not purposefully avail himself of a forum state when his "sole contact" is contracting with a forum resident. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010); *see Rudzewicz*,

471 U.S. at 478. A defendant may purposefully avail himself of a forum state when he contracts with a forum resident and has "further contacts" that connect him to the forum. *Diamond Crystal Brands*, 593 F.3d at 1268–69. To determine whether a party to a contract has purposefully availed himself of the forum state, district courts consider the contract's negotiations, terms, anticipated future consequences, and the parties' course of dealing. *Rudzewicz*, 471 U.S. at 479. This ensures that the "quality of the interstate transaction" is not so "random" or "fortuitous" that the defendant should not "reasonably anticipate defending a suit there." *Rudzewicz*, 471 U.S. at 486.

A defendant who "reach[es] out beyond one state and create[s] continuing relationships and obligations" with a forum resident purposefully avails himself of the forum state. *Rudzewicz*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)). In *Rudzewicz*, a Michigan resident entered a 20-year franchise agreement with a company that was headquartered in Miami, Florida. The franchisee negotiated the agreement with the Miami headquarters. The parties' agreement "provide[d] that the franchise relationship [was] established in Miami and governed by Florida law." *Rudzewicz*, 471 U.S. at 466–67. Throughout the parties' business relationship, the company regulated "virtually every conceivable aspect" of the franchise operations, *Rudzewicz*, 471 U.S. at 465, and the franchisee paid licensing and other fees to the company's Miami headquarters.

12

After the franchisee defaulted on his payments, the company sued him in the Southern District of Florida. The Supreme Court held that the franchisee purposefully availed himself of Florida because he "reach[ed] out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise," voluntarily accepted "long-term and exacting regulation of his business from [the] Miami headquarters," and "caused foreseeable injuries to the corporation in Florida." *Rudzewicz*, 471 U.S. at 479–80 (quotation omitted).

Viewing the jurisdictional evidence in the light most favorable to Doster, Climate Control "reach[ed] out beyond" Texas and "negotiated with" an Alabama corporation to form a financially beneficial relationship. *Rudzewicz*, 471 U.S. at 479. Over an eight-year period, Climate Control entered nine contracts with Doster. When Doster invited bids for HVAC work on the Florida project, Climate Control communicated with Doster representatives in Birmingham to negotiate and execute the contract. Climate Control continued communicating with Doster representatives in Birmingham while performing the HVAC work in Florida. Climate Control knew that its conduct could cause Doster to experience a financial injury in Alabama. Thus, the "quality and nature" of Climate Control's relationship with Doster in Alabama is not "random" or "fortuitous"; Climate Control could reasonably anticipate defending a suit in Alabama. *See Rudzewicz*, 471 U.S. at 480.

13

Because Doster has established that Climate Control has sufficient contacts with Alabama for this district court to exercise personal jurisdiction over the company, to succeed on its motion to dismiss, Climate Control must "make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Climate Control has not argued that this Court's exercise of jurisdiction over the company would "violate traditional notions of fair play and substantial justice. Accordingly, this Court may exercise jurisdiction over Climate Control.

***

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in 28 U.S.C. § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under 28 U.S.C. § 1406(a). . . . As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 55–56 (2013) (footnotes omitted).

Section 1391(b) provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in

14

which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). "An entity with the capacity to be sued" is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2). Accordingly, this case falls within one of the three categories set out in § 1391(b).

Because the Court may exercise jurisdiction over the defendants, § 1406 does not provide a basis for transferring this case to another district. That leaves 28 U.S.C. § 1404(a) as a vehicle for transfer. That statute provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Here, the parties have not consented to a particular venue. Therefore, the Court must consider the following factors to determine whether to transfer this case to the Middle District of Florida or Southern District of Texas: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 241, n. 6 (1981) (internal quotation marks omitted).  Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Piper Aircraft Co.*, 454 U.S. at 241, n. 6 (internal quotation marks omitted).

The Court also must give some weight to the plaintiffs' choice of forum.  *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62 n.6 (2013).  The Court must "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  *Atl. Marine Const. Co.*, 571 U.S. at 62–63 (quoting 28 U.S.C. § 1404(a)).

From the Doster's perspective, the Northern District of Alabama is the most convenient forum.   Cobey Everett, Doster's Senior VP of Field Operations, and Tyler Schnell, Doster's Project Manager for the Florida project, reside in Alabama and work in this district.  (Doc. 11-1, p. 6, ¶¶ 13–14).  As noted, Doster has its corporate headquarters in this district in Birmingham, Alabama.  (Doc. 11-1, p. 3, ¶ 4).  Doster maintains in Birmingham documents concerning the parties' contract and Climate Control's performance.  (Doc. 11-1, p. 9, ¶ 25).

For Climate Control, Texas offers a more convenient forum. Jesus Gonzalez, Climate Control's manager and CEO, Humberto Ramirez, Climate Control's Lead Sales Manager, and Julian Gonzalez, Climate Control's on-site supervisor, reside in Texas and work in Climate Control's Houston office. (Doc. 12-3, pp. 3–4, ¶ 10). Climate Control's principal place of business is in Houston, Texas. (Doc. 7-5, pp. 3-4, ¶ 10). Climate Control maintains in Houston documents regarding the parties' contract and its performance. (Doc. 12-3, p. 2, ¶ 4). Climate Control identifies a representative of an HVAC equipment and materials manufacturer, Fernando De law O, as a key witness who resides in Texas and works in Houston. (Doc. 12-3, p. 3 ¶ 10). Climate Control attests that, because the company has only 19 employees, the travel required for depositions, hearings, and trial for this matter in Birmingham would impair their operations and impose a substantial financial burden. (Doc. 12-3, pp. 2 – 3, ¶¶ 3, 9).

Florida offers a third forum option. The construction project at issue, and Climate Control's work under the parties agreement, occurred in Florida. (Doc. 7-5, pp. 2–3, ¶ 6). Therefore, a site visit would occur in Florida, and local inspectors may have to be deposed in Florida. (Doc. 7-5, p. 4, ¶ 12). The other potential witnesses the parties have identified do not reside in Florida. The apartment development's owner is based in North Carolina, (Doc. 11-1, p. 3, ¶¶ 4–5), the company that performed most of the remedial HVAC work is based in Georgia,

17

(Doc. 11-1, p. 9, ¶ 24), and the company that manufactured the materials Climate Control used for their HVAC work is based in Texas, (Doc. 12-3, pp. 2, 3, ¶¶ 8, 10).

On balance, most of the witnesses with information concerning Doster's claims are in this district. Therefore, this district offers the greatest access to sources of proof. Counsel for Climate Control can travel to Texas to depose witnesses there and have a videographer record the depositions, giving the defendants the option of avoiding travel to this district if this case proceeds to trial. The attorneys can manage the paper discovery for the case electronically, minimizing or obviating inconvenience related to that work. It would be at least equally inconvenient for Doster and Climate Control to travel for trial whether the case proceeds in Alabama or Texas, and both parties likely would travel for trial if the case proceeds in Florida. Additionally, Alabama law governs Doster's claims against Climate Control, so this Court is "at home with the [applicable] law." *Piper Aircraft Co.*, 454 U.S. at 241, n.6.

On balance, transfer will not serve the convenience of parties and witnesses or otherwise promote the interests of justice. Thus, Climate Control has not established a basis for transferring this case under 28 U.S.C. § 1404.

## IV.

For the reasons above, the Court denies Climate Control's motion to dismiss for lack of personal jurisdiction and improper venue and declines to transfer venue

18

under § 1404.  (Doc. 7).  The Clerk of Court shall please TERM Doc. 7.  Within 14 days of the date of this order, the parties shall please hold a Rule 26(f) meeting, file a joint report of their planning meeting, and email a joint proposed scheduling order to chambers.

**DONE** and **ORDERED** this June 1, 2026.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE